IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| LORIE MCCALLUM SMITH,<br><br>        Plaintiff,<br><br>vs.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,[1]<br><br><br>        Defendant. | No. 1:22-CV-486 |

## **REPORT AND RECOMMENDATION**

The claimant, Lorie McCallum Smith, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). Smith filed claims for Title II disability and disability insurance benefits on October 14, 2020, alleging disability beginning January 15, 2020. (Tr. 164-69.) The Commissioner denied her application initially and on reconsideration and she subsequently filed this appeal. (Tr. 55-71.) The District Court referred the case to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b) and a standing order of reference. For the reasons explained below, the undersigned finds that the Administrative Law Judge ("ALJ") erred in assessing the medical opinion evidence and that remand is warranted.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. JUDICIAL REVIEW

This court reviews the Commissioner's denial of social security disability benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted). Substantial evidence is merely enough that a reasonable mind could arrive at the same decision; though the evidence "must be more than a scintilla[,] it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quotation marks and citation omitted).

Reviewing courts, therefore, give the Commissioner's decisions great deference. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Courts may not re-weigh evidence, try issues *de novo*, or substitute their judgments for those of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). A court cannot reverse the Commissioner simply because the court might have decided the case differently in the first instance. *Elfer v. Texas Workforce Commission*, 169 F. App'x 378, 380 (5th Cir. 2006); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (stating that the court may not "substitute [its] judgment for that of the Secretary"). Rather, it is for the Commissioner to weigh evidence and resolve conflicts. *See Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

## II. DISABILITY DETERMINATION PROCESS AND THE ALJ'S DECISION

In assessing disability benefits, the Commissioner uses a five-step sequential evaluation process to determine whether an individual is disabled within the meaning of the Act. *See* 20 C.F.R. § 404.1520. At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. *See id.* § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or

profit." *Newton v. Apfel*, 209 F.3d 448, 452–53 (5th Cir. 2000) (citing 20 C.F.R. §§ 404.1572(a)–(b)). If the claimant engages in substantial work experience, she is not disabled regardless of how severe the physical nor mental impairments are and regardless of age, education, and work experience. *Id.* If the claimant is not engaging in substantial work experience, the analysis proceeds to the next step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." *See id.* § 404.1520(a)(4)(ii). An impairment or combination of impairments is considered severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *See id.* §§ 404.1520(c). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. *See* 20 C.F.R. § 404.1520(c). If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the next step.

At step three, the ALJ must determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment found in the Listing of Impairments ("the Listings"), a set of medical criteria found at 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant has an impairment or combination of impairments that meets or medically equals the criteria of a listing, and it has lasted or is expected to last for a continuous

3

period of at least twelve months, the claimant is disabled. *See id.* § 404.1520(d). If not, the analysis proceeds to the next step.

Before reaching step four of the five-step sequential evaluation process, however, the ALJ must first determine the claimant's residual functional capacity ("RFC"), which is the most that she can still do despite her limitations. *See id.* § 416.945(a)(1). The ALJ uses the RFC assessment at step four to determine if the claimant can do her past relevant work and at step five to determine if the claimant can adjust to any other work existing in the national economy. *See id.* § 404.1520(e).

At step four, the ALJ reviews the RFC assessment and the demands of the claimant's past relevant work. *See id.* § 404.1520(f). The term "past relevant work" ("PRW") is defined as work that the claimant has done within the past fifteen years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it. *See id.* § 404.1560(b)(1). If the claimant has the RFC to do PRW, he is not disabled. *See id.* § 404.1560(3). If the claimant's impairment or combination of impairments preclude her from performing his PRW, the fifth and final step of the sequential evaluation process assesses the claimant's ability—given her residual capacities, age, education, and work experience—to do other work. *See id.* § 404.1520(g). If the claimant is able to do other work, she is not disabled. *Id.* If the claimant's impairment or combination of impairments precludes her from performing any other type of work, she will be found to be disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the sequential evaluation process. *See Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that

there is other gainful employment available in the national economy that the claimant is capable of performing. *Id.*

Here, the administrative law judge ("ALJ") held a hearing on February 16, 2022, and issued his decision denying her benefits on March 3, 2022. (Tr. 12-18.) In reaching his decision, the ALJ utilized the five-step sequential analysis model specified by regulations and approved by courts. He found at step one that Smith did not engage in substantial gainful activity during the relevant period. (Tr. 17.) At step two, the ALJ found that the following qualified as "severe" impairments: epilepsy, carpal tunnel syndrome, left knee osteoarthritis, obesity, cataract, and reduced vision. (Tr. 17.) At step three, the ALJ found that none of Smith's impairments, either alone or in combination, met or equaled the criteria of an impairment in the Listings. (Tr. 16-18.) The ALJ then assessed her RFC, finding that she could perform:

> [L]ight work as defined in 20 CFR 404.1567(b) except the claimant can only occasionally walk on ladders, ropes, or scaffolds. The claimant can frequently walk on ramps and stairs, stoop, kneel, crouch and crawl. The claimant can frequently reach and handle with the bilateral upper extremities. The claimant *must wear corrective* lenses for all work activities. The claimant must avoid exposure to heights, open flames, dangerous machinery, and exposed electrical currents.

(Tr. 19) (emphasis added). At step four, the ALJ found that Smith was capable of performing her PRW as a data entry clerk (DOT 203.582-054, semi-skilled, SVP4), and consequently, did not proceed to step five. (Tr. 22.) Smith requested review of the ALJ's decision and the Appeals Council denied her request on September 15, 2022. (Tr. 1-7.) Therefore, the ALJ's decision serves as the Commissioner's final decision for purposes of judicial review pursuant to 42 U.S.C. § 405(g).

### III.  POINT OF ERROR AND RESPONSE

Smith raises one point of error: that the "RFC does not include work-related limitations consistent with the opinions of [treating source] Dr. Richardson, which the ALJ found to be somewhat persuasive." (Dkt. #11, p. 5.)  Specifically, Smith contends that her treating optometrist, Mark Richardson, O.D., opined that she could only *frequently* perform activities in near acuity and accommodation (hereinafter "acuity/accomodation"), but that the job of data entry clerk requires *constant* acuity/accommodation, and that the ALJ erred in not explaining his decision to exclude Dr. Richardson's findings from his RFC assessment.[2]

The Commissioner responds that contrary to Smith's claim, the ALJ properly evaluated Dr. Richardson's opinion, posed a properly supported RFC to the vocational expert, whose testimony he relied on in determining that she is not disabled, and that therefore, the decision is supported by substantial evidence.  The Commissioner does not dispute that the job of data entry clerk requires constant acuity/accommodation as defined by the Dictionary of Occupational Titles.

### IV.  RELEVANT MEDICAL EVIDENCE[3]

Smith first presented to Mark Richardson, O.D., on May 3, 2019, with complaints of blurry vision. (Tr. 452.)  An examination revealed best corrected visual acuity of 20/40 OD and

---

[2]  Visual acuity is defined as "recognition of an object on a background of different character" and relates to the clarity or sharpness of vision.  STEDMAN'S MEDICAL DICTIONARY (28th.) ("Stedman's"), p. 22. "Accommodation" of the eye is defined as "the increase in thickness and convexity of the eye's lens in response to ciliary muscle contraction to focus the image of an external object on the retina" and relates to the eye's ability to focus on objects at different distances. *Id.*, p. 10.

The Commissioner defines "frequent" (as it relates to a person's ability to perform work) to mean "occurring from one-third to two-thirds of the time." S.S.R. 83-10,  Soc. Sec. Rep. Serv. 24, 1983 WL 31251, at *6.

[3]  Smith's appeal focuses exclusively on her alleged visual impairment, and therefore, a complete recitation of all of the medical evidence is not warranted to evaluate the merits of her appeal.

20/50 OS, and Dr. Richardson diagnosed bilateral amblyopia,[4] bilateral hypermetropia,[5] and presbyopia.[6] (Tr. 453.) In a November 16, 2020 Treating Source Statement, Dr. Richardson noted his diagnosis of "cataract" and assessed Smith's best corrected visual acuity as 20/40 on the right and 20/50 on the left, with symptoms of blurred vision. (Tr. 449.) He noted the following limitations:

|  | Never | Rarely | Occasionally | Frequently | Constantly |
|---|---|---|---|---|---|
| Near Acuity |  |  |  | ✓ |  |
| Far Acuity |  |  |  | ✓ |  |
| Depth Perception |  |  |  | ✓ |  |
| Accommodation |  |  |  | ✓ |  |
| Color Vision |  |  |  | ✓ |  |
| Field of Vision |  |  |  | N/O |  |

(Tr. 450.) Dr. Richardson further opined that Smith's impairments are likely to produce both good and bad days, and he recommended that she avoid night driving. (Tr. 450-451.)

Smith saw Nick Ho, O.D., on April 23, 2021, for an optometric consultation. (Tr. 411-412.) She reported blurred vision and Dr. Ho assessed her visual acuity with best correction for distance was 20/50-2 on the right and 20/60+2 on the left, and for near was 20/70 for both left and right. (*Id.*) Dr. Ho assessed age-related nuclear cataract, but normal ocular health that "did not correlate with reduced visual acuities and blindness of peripheral vision." (*Id.*) Dr. Ho did not render an RFC or any vocational findings related to her vision impairment.

Smith self-reported that her vision is "sometimes" a "little blurry" on a vision questionnaire dated August 8, 2021. (Tr. 292.)

---

[4] "Amblyopia" is defined as an impairment of vision without detectable organic lesion of the eye. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY at 56, 29th Edition (2000).

[5] "Hypermetropia" is a characterized by "decreased refractivity of the lens." Stedman's, p. 923.

[6] "Presbyopia" is defined as the "physiologic loss of accommodation in the eyes in advancing age, said to begin when the near point has receded beyond 22 cm." Stedman's, p. 1556.

## V. DISCUSSION

Smith's point of error is simple. Dr. Richardson, her treating optometrist who the ALJ found to be "somewhat persuasive," limited her to only *frequent* near acuity/accommodation. However, the job identified by the ALJ requires *constant* acuity/accommodation, and consequently, she alleges that the RFC is not supported by the evidence. Smith also challenges the sufficiency of the ALJ's explanation of his assessment of Dr. Richardson's opinion evidence.

A.   *Did the ALJ commit legal error?*

In assessing Dr. Richardson's medical source statement, the ALJ explains that he "finds his opinion to be somewhat persuasive, but ultimately finds the [RFC he assesses] to properly suited for the claimant." The ALJ did not cite supporting or conflicting medical evidence for support or further clarify his decision.

Pursuant to the revised rules for evaluating medical opinions, the ALJ must determine the persuasiveness of a physician's medical opinion. 20 C.F.R. § 404.1520c(b). When evaluating whether a medical opinion is persuasive, the ALJ considers five factors: 1) supportability; 2) consistency; 3) the relationship with the claimant; 4) specialization; and 5) other factors which "tend to support or contradict the opinion." *Id*. § 404.1520c(c). When addressing the sufficiency of an ALJ's persuasiveness discussion under § 404.1520c(b)(2), one court described the ALJ's obligation as follows:

> An ALJ's persuasiveness discussion is critical to his analysis and . . . must provide the Court with an 'adequate discussion' of his reasons for finding a particular medical opinion to be persuasive or unpersuasive. The measuring stick for an 'adequate discussion' is whether the ALJ's persuasiveness explanation enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof. Stated differently, there must be a discernible 'logic bridge' between the evidence and the ALJ's persuasiveness finding.

*Cooley v. Comm'r of Soc. Sec.*, 587 F. Supp. 3d 489, 500 (S.D. Miss. 2021) (citing *Pearson v. Comm'r*, 2021 WL 3708047, at *5 (S.D. Miss. 2021); *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *4 (S.D. Tex. 2022). The most important factors in this analysis are supportability and consistency. *See id.*; 20 C.F.R. § 404.1520c(b)(2) (The ALJ must "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions or prior medical findings in [his] determination or decision.").

"Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."); *see also, Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. 2021) ("[T]he strength of a medical opinion increases as the relevance of the objective evidence and explanations presented by the medical source increase." (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency," on the other hand, is "an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." (*Id.*)

The ALJ was required, at a minimum, to articulate his consideration of two factors—supportability and consistency—in considering Dr. Richardson's medical opinion evidence. *Hearn v. Kijakazi*, No. 4:21-CV-562-SDJ-KPJ, 2022 WL 4477340, at *6 (E.D. Tex. 2022), R. & R. No. 4:21-CV-562-SDJ-KPJ, 2022 WL 4474251 (E.D. Tex. 2022) (remanding where ALJ did not satisfy the articulation requirements for evaluation of medical source opinions when he used

boilerplate language). He failed to do so. Accordingly, he committed legal error.[7] *See, e.g., Edwards v. Kijakazi*, No. 4:22-CV-00520, 2023 WL 2386748, at *4 (S.D. Tex. 2023), *R. & R. adopted sub nom. Edwards v. Comm'r of Soc. Sec. Benefit*, No. 4:22-CV-00520, 2023 WL 2616018 (S.D. Tex. 2023) (finding that the ALJ's statement that the record is "consistent with the RFC" is a *non sequitur* that does not supply the requisite "logic bridge"); *Shugart v. Kijakazi*, 2022 WL 912777, at *4 (S.D. Tex. 2022) (ALJ's lack of "meaningful discussion of the consistency and supportability of" a medical opinion was error).

### B.  Was the ALJ's error prejudicial?

Nevertheless, because "[p]rocedural perfection in administrative proceedings is not required" and a court "will not vacate a judgment unless the substantial rights of a party are affected," Smith must show she was prejudiced by the ALJ's error to achieve remand. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). In other words, Smith must demonstrate that the ALJ's error was not harmless because it resulted in a decision not supported by substantial evidence that a "reasonable mind" would accept.[8] "In the Fifth Circuit, harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error." *Davidson v. Colvin*, 164 F. Supp. 3d 926, 944 (N.D. Tex. 2015).

Here, the ALJ does not rely on any medical evidence to determine that Smith is capable of constant visual acuity/accommodation, which is undeniably required to perform the tasks of

---

[7]  While the Commissioner speculates reasons for the ALJ's decision in his brief—that the opinion evidence was a checkmark form and therefore limited value, or that an ALJ is not required to adopt every portion of a doctor's opinion—a *post hac* explanation is not permissible because the decision itself must allow a court to take a "meaningful review" as to whether it is supported by substantial evidence. *Cf. Pearson*, 2021 WL 3708047, at *5; *Miller v. Comm'r of Soc. Sec.*, No. 1:20-CV-194-HSO-RPM, 2021 WL 7541415, at *9 (S.D. Miss. Dec. 17, 2021), report and recommendation adopted, No. 120CV00194HSORPM, 2022 WL 566175 (S.D. Miss. Feb. 24, 2022).

To clarify, the undersigned does not find that there is *no* viable explanation to discount Dr. Richardson's findings, but that the explanation provided is insufficient.

[8]  Substantial evidence under the Social Security Act "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

her PRW as a data entry clerk. Accordingly, the undersigned finds that ALJ's decision is not supported by substantial evidence and that remand is warranted.

## V.  CONCLUSION AND RECOMMENDATION

The only treating doctor opinion evidence in this case states that Smith is limited to only *frequent* acuity/accommodation. The ALJ found that she can perform a job that requires *constant* acuity/accommodation. This finding was error and unsupported by the medical evidence for the reasons discussed above. Accordingly, this case should be remanded for further proceedings so that the ALJ can provide this mandatory explanation and proceed to Step Five, if necessary.

## VI.  OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c), each party to this action has the right to file objections to this report and recommendation. Objections to this report must: (1) be in writing, (2) specifically identify those findings or recommendations to which the party objects, and (3) be served and filed within fourteen (14) days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1)(c) (2009); Fed. R. Civ. P. 72(b)(2). A party who objects to this report is entitled to a *de novo* determination by the United States district judge of those proposed findings and recommendations to which a specific objection is timely made. *See* 28 U.S.C. § 636(b)(1) (2009); Fed R. Civ. P. 72(b)(3).

A party's failure to file specific, written objections to the proposed findings of fact and conclusions of law contained in this report, within fourteen (14) days of being served with a copy of this report, bars that party from: (1) entitlement to de novo review by the United States district judge of the findings of fact and conclusions of law, *see Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of

any such findings of fact and conclusions of law accepted by the United States district judge, *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, at 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 27th day of February, 2024.

_____
Zack Hawthorn
United States Magistrate Judge